No. 23-55054

UNITED STATES CIRCUIT COURT OF APPEALS
FOR THE NINTH CIRCUIT

LOS PADRES FORESTWATCH, a non-profit organization, CENTER FOR
BIOLOGICAL DIVERSITY, a non-profit organization; and EARTH ISLAND
INSTITUTE, a non-profit organization,

*Plaintiffs and Appellants*

*vs.*

U.S. FOREST SERVICE, CHRISTOPHER STUBBS, in his official capacity as
Supervisor of the Los Padres National Forest, and the U.S. FISH AND WILDLIFE
SERVICE,

*Defendants and Appellees,*

*and*

AMERICAN FOREST RESOURCE COUNCIL, a non-profit corporation,
CALIFORNIA FORESTRY ASSOCIATION, a nonprofit corporation, and
ASSOCIATED CALIFORNIA LOGGERS, a non-profit corporation,

*Defendant-Intervenors and Appellee-Intervenors*

APPEAL FROM DENIAL OF MOTION FOR SUMMARY JUDGMENT

By the United States District Court, Central District of California
Honorable Virginia A. Phillips, U.S. District Judge

**APPELLANTS' OPENING BRIEF**

Justin Augustine
1212 Broadway, Suite 800
Oakland, CA 94612
(916) 597-6189
jaugustine@biologicaldiversity.org

Brian Segee
226 W. Ojai Ave., Ste. 101-442
Ojai, CA 93023-3278
(805) 750-8852
bsegee@biologicaldiversity.org

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure 26.1, Plaintiffs Los Padres ForestWatch, Center for Biological Diversity and Earth Island Institute state that they are non-profit entities that have not issued shares to the public and have no affiliates, parent companies, or subsidiaries issuing shares to the public.

Respectfully submitted this 24th day of April,

*/s/ Justin Augustine*

_____

Justin Augustine

*Attorneys for Plaintiffs-Appellants*

**TABLE OF CONTENTS**

STATEMENT OF JURISDICTION..........................................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...........................1

STATEMENT OF ADDENDUM ........................................................................1

STATEMENT OF THE CASE............................................................................2

   I.   INTRODUCTION ...........................................................................2

   II.  THE TECUYA RIDGE PROJECT AND ANTIMONY IRA .........................4

   III. PRIOR AGENCY AND JUDICIAL PROCEEDINGS ..................................8

SUMMARY OF THE ARGUMENT ...................................................................9

ARGUMENT ..............................................................................................11

   I.   STANDARD OF REVIEW................................................................11

   II.  THE REVISED DECISION AGAIN VIOLATES THE ROADLESS RULE BY NOT
       RATIONALLY EXPLAINING HOW THE TECUYA RIDGE PROJECT LIMITS TREE
       CUTTING TO GENERALLY SMALL DIAMETER TIMBER.....................12

      A. The Forest Service Did Not Adequately Address this Court's Bases for
          Holding that the Tecuya Ridge Project Violates the Roadless Rule........14

         1.  The Los Padres Land Management Plan Definition of "Large Tree" 15

         2.  The Adjacent Frazier Mountain Project..............................................16

         3.  Risk of Wildfire....................................................................................18

      B. The Forest Service's "Growth Potential" Rationale is Arbitrary and
          Capricious....................................................................................20

      C. The Word "Generally" Cannot be Viewed in Isolation ...........................25

CONCLUSION .............................................................................................27

# TABLE OF AUTHORITIES

## Cases

*Amazon.com, Inc. v. Comm'r,*

934 F.3d 976 (9th Cir. 2019) ................................................................ 22

*Anaheim Mem. Hosp. v. Shalala,*

130 F.3d 845 (9th Cir. 1997) ................................................................ 11

*Cal. ex rel. Lockyer v. United States Dep't of Agric.,*

575 F.3d 999 (9th Cir. 2009) .................................................................. 2

*Kisor v. Wilkie,*

139 S. Ct. 2400 (2019) .......................................................................... 22

*Los Padres ForestWatch v. United States Forest Serv.,*

25 F.4th 649 (9th Cir. 2022) (*Tecuya I*) ...................................... passim

*Los Padres ForestWatch v. United States Forest Serv.,*

No. 2:19-cv-05925-VAP-KSx, 2022 U.S. Dist. LEXIS 219077, 2022 WL

18356465, (C.D. Cal. Dec. 5, 2022) ................................................ 9, 14

*Maceren v. Dist. Dir., Immigration & Naturalization Serv.,*

509 F.2d 934 (9th Cir. 1974) ................................................................ 21

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*

463 U.S. 29 (1983) ........................................................ 11, 15, 16, 20, 25

*N. Alaska Envtl. Ctr. v. United States DOI*,

   965 F.3d 705 (9th Cir. 2020) ................................................................. 11

*Or. Nat. Desert Ass'n v. BLM*,

   531 F.3d 1114 (9th Cir. 2008) ............................................................... 18

*Organized Vill. of Kake v. United States Dep't of Agric.*,

   795 F.3d 956 (9th Cir. 2015) ................................................................. 11

*Presley v. Etowah County Comm'n*,

   502 U.S. 491 (1992) ............................................................................... 21

*United States v. Singh*,

   979 F.3d 697 (9th Cir. 2020) ................................................................. 23

**Statutes**

5 U.S.C. § 706 ............................................................................................ 11

28 U.S.C. § 1291 ........................................................................................... 1

28 U.S.C. § 1331 ........................................................................................... 1

**Code of Federal Regulations**

36 C.F.R. § 294.13 ......................................................................... 1, 6, 12, 23

**Other**

66 Fed. Reg. 3,244 (Jan. 12, 2001) .................................. 2, 5, 6, 12, 13, 19, 23, 24

## STATEMENT OF JURISDICTION

Jurisdiction in the District Court existed under 28 U.S.C. § 1331 because Plaintiffs-Appellants' claims are based on federal law. Pursuant to 28 U.S.C. § 1291, this Court has jurisdiction over the appeal of the District Court's final order granting summary judgment to Defendants-Appellees and denying summary judgment to Plaintiffs-Appellants. The District Court entered its judgment on January 4, 2023. ER-4. Plaintiffs-Appellants appealed on January 13, 2023, and the appeal was timely pursuant to Federal Rules of Appellate Procedure 4(a)(1). ER-122. Plaintiffs have demonstrated standing in their filings before the District Court, and standing was not challenged during the District Court proceedings. ER-117-120.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.      Did the U.S. Forest Service violate the Roadless Area Conservation Rule, 36 C.F.R. § 294.13, when the agency authorized the logging of trees up to 21 inches in diameter in the Antimony Inventoried Roadless Area even though the Rule only permits the logging of "generally small diameter timber"?

## STATEMENT OF ADDENDUM

Pursuant to Ninth Circuit Rule 28-2.7, pertinent statutory, regulatory, and other provisions are set forth in an addendum attached to this brief as Attachment A.

1

# STATEMENT OF THE CASE

## I. Introduction

For the second time, Appellants bring a challenge to the U.S. Forest Service's proposed logging of the Antimony Inventoried Roadless Area ("Antimony IRA") on southern California's Los Padres National Forest. Little more than a year ago, this Court held that the agency's approval of the "Tecuya Ridge Shaded Fuelbreak Project" violated the 2001 Roadless Area Conservation Rule[1] and vacated the decision. *Los Padres ForestWatch v. United States Forest Serv.*, 25 F.4th 649 (9th Cir. 2022) (*Tecuya I*). The Court's previous decision held that the Forest Service unlawfully determined that the proposed cutting qualified as the type of "rare" and "infrequent" exception to the Roadless Rule's general prohibition on logging; that exception allows timber cutting only if it is limited to "generally small diameter timber."

In its decision, the Court found that the Forest Service had failed to articulate a rational explanation for its determination that the 21-inch trees targeted

---

[1] The Roadless Rule appears in the 2001-2004 editions of the Code of Federal Regulations, at 36 C.F.R. §§ 294.10-14. In 2005, it was replaced by the State Petitions Rule. 70 Fed. Reg. 25,654 (May 13, 2005). When that replacement was set aside the following year, the Roadless Rule was reinstated. *Cal. ex rel. Lockyer v. United States Dep't of Agric.*, 459 F. Supp. 2d 874 (N.D. Cal. 2006), *aff'd*, 575 F.3d 999 (9th Cir. 2009). However, the General Printing Office has thus far not conformed the current published Code accordingly. This brief therefore contains citations to the 2001 Roadless Rule Federal Register Notice (66 Fed. Reg. 3,244), which is also found in the excerpts of record at ER-86-116.

by the Tecuya Ridge Project are "small" within the meaning of the Roadless Rule. *Tecuya I*, 25 F.4th at 655-659. Indeed, the Court explained that the agency had failed to provide any data regarding the size of trees in the Project area at all. *Id*. Further noting that the Los Padres Land Management Plan defines "large-diameter" trees as those 24-inches or larger, the Court concluded that the extensive cutting of trees as large as 21-inches could be characterized, "at best," as "medium-sized," not "generally small" trees as contemplated by the Roadless Rule. *Id*. at 658. The Court also identified several additional reasons for its holding, including the Forest Service's failure to provide any technical analysis as to "which 'generally small' trees pose an uncharacteristically high risk of fire spread and intensity," or "why 21-inch [] trees, specifically, are creating the risk of wildfire that the Project seeks to ameliorate." *Id*. at 659.

On remand, in a seven-page appendix to a re-issued Decision Memo, the Forest Service rapidly reaffirmed its previous conclusion that the project "will thin 'generally small diameter timber' consistent with the Roadless Rule." ER-46-52. While providing the stand data found to be absent in the Ninth Circuit's decision— confirming that the project landscape is overwhelmingly dominated (95 percent) by trees smaller than 14-inches—the Forest Service's new analysis otherwise failed to meaningfully address the numerous additional grounds for the Court's remand.

3

Instead, the agency primarily relied on a wholly new and completely different rationale, proclaiming that "the most appropriate benchmark for whether a tree is 'small' or 'large' is the growth potential for a given species in a given area." ER-49. According to the Forest Service, because it previously allowed logging of the very largest and oldest trees nearly 100 years ago, even the largest remaining trees today are small compared to the trees that once occupied the site. *Id*. Because 21-inch trees in the Tecuya Ridge Project area are not as large as they eventually could become, the Forest Service thus concluded that logging those trees meets the Roadless Rule's "generally small diameter timber" exception.

The Court should reject this newly minted justification for logging thousands of the largest remaining trees within the Antimony IRA. The Forest Service's contorted logic would create a gaping exception to the Roadless Rule's general logging prohibition that is counter to the Rule's plain language and intent, and is thus entitled to no deference. For these and other reasons detailed below, Appellants respectfully request this Court to reverse the District Court's order (ER-5-22) and the Forest Service's revised Decision Memo (ER-23-52) and remand the Forest Service's decision once again.

## II.    The Tecuya Ridge Project and the Antimony IRA

Two-thirds of the Tecuya Ridge Project (approximately 1,100 acres) would occur within the high-elevation forests of the Antimony IRA (ER-36), which is

part of the larger "Mt. Pinos Place," as identified in the Forest Service's Los
Padres National Forest Strategy (ER-83). Mt. Pinos Place is a "big tree (old
growth), high country environment offering opportunities for year-round
recreation" and "is the center of the Chumash Indian Universe." *Id.* Together, Mt.
Pinos Place and the "adjacent Wind Wolves Preserve, the Bitter Creek [National]
Wildlife Refuge and Carrizo Plains National Monument . . . comprise a large,
interconnected block of wildland habitat for many species." *Id.* For example,
endangered California condors use the Antimony IRA "extensively for travel and
roosting as they soar on uplifted winds along the southern boundary of the San
Joaquin Valley," and there have "also been California spotted owls . . . detected in
the older conifers within this [IRA]." ER-68. The Antimony IRA also provides
habitat for "mule deer, mountain lion, and black bear," as well as "fox, quail, band-
tailed pigeon, coyote, bobcat, and rabbit." ER-69.

In 2001, in order "to protect and conserve inventoried roadless areas on
National Forest System lands," the Forest Service established the Roadless Area
Conservation Rule. 66 Fed. Reg. at 3,244 (ER-87). Inventoried roadless areas
"comprise only 2% of the land base in the continental United States," but "provide
many social and ecological benefits." *Id.* at 3,245 (ER-88). For example, these
remnant undeveloped areas "provide large, relatively undisturbed landscapes that
are important to biological diversity and the long-term survival of many at-risk

5

species . . . [and] provide opportunities for dispersed outdoor recreation, opportunities that diminish as open space and natural settings are developed elsewhere." *Id.*

The Roadless Rule recognizes logging as one of the activities with the "greatest likelihood of altering and fragmenting landscapes, resulting in immediate, long-term loss of roadless area values and characteristics." 66 Fed. Reg. at 3,244 (ER-87). Accordingly, to maintain the integrity of inventoried roadless areas, "[g]enerally, timber cutting, sale, or removal in areas like the Antimony IRA are prohibited by the Roadless Area Conservation Rule." *Tecuya I*, 25 F.4th at 655. A "rare" exception to this overall logging prohibition exists for the "cutting, sale, or removal of generally small diameter timber." 36 C.F.R. § 294.13, 66 Fed. Reg. at 3,273 (ER-116).

Originally, the "type of treatment" associated with the Tecuya Ridge Project's logging was a "hand cut." ER-79. As approved, however, the Project primarily relies upon mechanical treatment. ER-28 (Table 2 showing "treatment by stand type" to include 828 acres of mechanical treatment and 467 acres of hand cutting in mixed-conifer forest, as well as 192 acres of mechanical treatment and 54 acres of hand cutting in pinyon-juniper forest). Hand cutting does not usually involve the logging of trees over 10 inches in diameter, whereas mechanical treatment does. ER-81 (Forest Service explaining that "pre-commercial thinning . .

6

. is generally a hand-thinning prescription to remove material under 6 to 8 [inches]" whereas a "commercial thin" is "[g]enerally, a mechanical thinning prescription for removal of larger trees (10 [inches] and greater)"). Hand cutting is often used when thinning small trees to reduce the risk of wildfire effects—here, for instance, the Forest Service's "Fire/Fuels Report" shows that the largest fuel types in the Project area consist of "small tree understory" (ER-57), which means that larger sized trees do not need to be logged to address fire concerns.

The Tecuya Ridge Project tree data discloses that few larger sized trees exist in the Antimony IRA Tecuya Ridge Project area. Just thirteen percent of the trees in the Project area are larger than 10 inches in diameter, and only five percent are larger than 14 inches in diameter. ER-47 (Figure 1).[2] Smaller trees (0-10 inches in diameter), on the other hand, are abundant—296 per acre (*id*.), and the "mean diameter for the stand is 7.2 [inches] DBH[3] due to the abundance of trees on the lower end of the 0-14 [inch] diameter class." ER-48. Despite the rarity of larger sized trees, the Tecuya Ridge Project authorizes the logging of over 3,000 trees over 14 inches in diameter in the Antimony IRA. ER-46-47 (Table 1, showing the Project allows the logging of 3.03 trees per acre with respect to trees 14-21 inches).

---

[2] There are currently 45.98 trees per acre greater than 10 inches in diameter, 17.15 greater than 14 inches in diameter, and 342 trees per acre total (i.e., between 0 and 44 inches dbh). 45.98/342=0.13; 17.15/342=.05.
[3] "DBH" stands for "diameter at breast height."

## III.    Prior Agency and Judicial Proceedings

The Forest Service first approved the Tecuya Ridge Project on April 9, 2019. ER-23. Appellants filed suit on July 10, 2019, and the District Court issued an order granting the Forest Service's motion for summary judgment and denying Appellants' motion for summary judgment on August 20, 2020. ER-132.

An appeal was brought pursuant to the National Environmental Policy Act ("NEPA") and the Roadless Area Conservation Rule, and on February 4, 2022, this Court found in favor of Appellants under the Roadless Rule: "By failing to explain why 21-inch dbh trees are the type of 'generally small trees' the Roadless Rule permits the Forest Service to harvest, the Forest Service has failed to show that it has complied with the intent of the Roadless Rule to 'limit the cutting, sale, or removal of timber to those areas that have become overgrown with smaller diameter trees.'" *Tecuya I*, 25 F.4th at 659.

Despite the Ninth Circuit's findings, on July 1, 2022, the Forest Service issued a revised Decision Memo that reaffirmed the agency's intent to log 21-inch trees in the Antimony IRA. ER-46-52. Appellants filed a supplemental complaint on September 7, 2022, asserting that the Forest Service continued to be in violation of the Roadless Rule. ER-137.

Following cross-motions for summary judgment, on December 5, 2022, the District Court issued an order granting the Forest Service's motion and denying

8

Appellants' motion. ER-5-22; *Los Padres ForestWatch v. United States Forest Serv.*, No. 2:19-cv-05925-VAP-KSx, 2022 U.S. Dist. LEXIS 219077, 2022 WL 18356465 (C.D. Cal. Dec. 5, 2022).

## SUMMARY OF THE ARGUMENT

The Forest Service's second decision authorizing logging of trees up to 21 inches in diameter in the Antimony IRA violates the Roadless Rule because the agency again arbitrarily concluded that 21-inch trees qualify as "generally small diameter timber."

In its revised Decision Memo on remand, the Forest Service failed to meaningfully confront the bases for this Court's holding in *Tecuya I* that the agency violated the Roadless Rule. The Forest Service made no effort to address its own Land Management Plan that defines large trees as 24 inches in diameter, and at the same time the agency ignored the tree size data now showing that 21-inch trees are extremely rare, and amongst the largest trees remaining, in the Antimony IRA Project area. This data also demonstrates that trees on nearby Frazier Mountain are larger than those on Tecuya Ridge, thus further solidifying that 21-inch trees cannot qualify as "generally small." Moreover, the revised Decision Memo fails to substantiate why the logging of 21-inch trees is necessary to address wildfire. *See infra*, Argument, Part II.A.

To sidestep this Court's *Tecuya I* findings, as well as the agency's own data,

the Forest Service concocts a new rationale out of whole cloth, asserting in the revised Decision Memo that "the most appropriate benchmark for whether a tree is 'small' or 'large' is the growth potential for a given species in a given area." As noted by the District Court, under this new framework, *all* of the trees within the Project area can now be characterized as "small." This "growth potential" rationale flies in the face of the agency's definition of "large" in its Land Management Plan, and would swallow the Rule's intent that logging only occur in "areas that have become overgrown with smaller diameter trees." *See infra*, Argument, Part II.B.

Similarly, the Forest Service asserts that the word "generally" in the Roadless Rule permits the agency to log any amount of medium or large sized trees as long as small trees are the majority of the trees being logged. This argument too would unlawfully allow the Forest Service to log virtually any roadless area tree the agency desires, including trees in the forest overstory that the Rule states should be left intact, so long as more smaller trees are logged than larger trees. *See infra*, Argument, Part II.C.

Because the Forest Service's interpretation of "generally small diameter timber" runs contrary to this Court's *Tecuya I* decision*,* as well as the agency's own data and the language of the Roadless Rule, Plaintiffs respectfully ask this Court to reverse the District Court's decision and vacate the revised Decision Memo.

## ARGUMENT

### I. Standard Of Review

This Court generally "review[s] de novo the district court's grant of summary judgment upholding an agency decision." *N. Alaska Envtl. Ctr. v. United States DOI*, 965 F.3d 705, 712 (9th Cir. 2020). Federal agency decisions are reviewed pursuant to the Administrative Procedure Act (APA), which "requires a court to hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Organized Vill. of Kake v. United States Dep't of Agric.*, 795 F.3d 956, 966 (9th Cir. 2015) (en banc) (quoting 5 U.S.C. § 706(2)(A).

In evaluating agency decisions, courts must ensure that the agency has articulated a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983). An agency's action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* "Further, an agency's decision can be upheld only on the basis of the reasoning in that decision." *Anaheim Mem. Hosp. v. Shalala*, 130 F.3d 845, 849 (9th Cir. 1997).

11

**II.     The Revised Decision Again Violates the Roadless Rule By Not Rationally Explaining How the Tecuya Ridge Project Limits Tree Cutting to Generally Small Diameter Timber**

The Tecuya Ridge Project continues to be, at its essence, a roadless area logging project. Approximately two-thirds of the project's treatments—more than 1,000 acres— would be conducted within the Antimony IRA, where trees up to 21 inches in diameter, *i.e.*, 5.5 feet in circumference, would be removed. As recognized by this Court in its previous decision, "[g]enerally, timber cutting, sale, or removal in areas like the Antimony IRA are prohibited by the Roadless Area Conservation Rule." *Tecuya I*, 25 F.4th at 655. The only exception to this prohibition is when the "cutting, sale, or removal of generally small diameter timber" occurs. 36 C.F.R. § 294.13, 66 Fed. Reg. at 3,273 (ER-116). In promulgating the Roadless Rule, the Forest Service stated that this exception was to be utilized "infrequent[ly]" and in "rare" circumstances. 36 C.F.R. § 294.13, 66 Fed. Reg. at 3,258, 3,273 (ER-101, 116). "Because of the great variation in stand characteristics between vegetation types in different areas, a description of what constitutes 'generally small diameter timber' is not specifically included in [the Roadless] rule." 66 Fed. Reg. at 3,257 (ER-100). Instead, "[s]uch determinations" are to be "guided by ecological considerations" such as the Rule's "intent . . . to limit the cutting, sale, or removal of timber to those areas that have become

12

overgrown with smaller diameter trees," "while leaving the overstory trees intact." *Id.* at 3,257, 3,258 (ER-100, 101).

Although the Forest Service's Decision Memo issued on remand provided the stand data previously omitted, it otherwise fails to meaningfully address the foundations of the Court's decision in *Tecuya I*. Instead, the Forest Service's second decision again disregards the Roadless Rule's requirements, skirts the language of the *Tecuya I* decision, and relies on a newly minted, "growth potential" rationale that would swallow the Roadless Rule's "rare" exception for logging within designated roadless areas.

The "stand characteristics" data provided on remand reveal that the information the Ninth Circuit requested—"evidence of the average or median dbh of the trees within the Tecuya Ridge Project area" (*Tecuya I*, 25 F.4th at 657)— shows that the average tree diameter is approximately *7.2 inches* (ER-48), and that more than *99 percent* of the trees in the Project area are less than 21 inches in diameter (ER-47, Figure 1). Tellingly, nowhere does the Forest Service explain how the logging of 21-inch trees complies with the Roadless Rule's "intent" to only log "overgrown" areas. Moreover, the Forest Service admits that the logging is not limited to "treating ground and ladder fuels in the understory," and instead also includes "treatments to the overstory" (ER-50) even though the Roadless Rule states that overstory trees are to be left "intact" (66 Fed. Reg. at 3,258 (ER-101)),

13

and even though the agency's Fire/Fuels Report (ER-53) states that the largest fuel type is "small tree understory" (ER-57), not overstory.

Despite this record evidence, and the fact "that every tree in the Antimony IRA is arguably small when compared to the tree's growth potential of 90-inches," the District Court upheld the Forest Service's new approach as "the most appropriate measure of whether a tree is 'generally small diameter timber.'" ER-20, 19; *Los Padres ForestWatch*, 2022 U.S. Dist. LEXIS 219077, 2022 WL 18356465, at *19, 18. As discussed below, the lower court's acceptance of the Forest Service's "growth potential" approach to determining what qualifies as "small diameter" timber under the Roadless Rule's logging exception runs contrary to the Ninth Circuit's findings in *Tecuya I,* as well as the Roadless Rule's language and intent, and should be reversed.

### A. The Forest Service Did Not Adequately Address this Court's Bases for Holding that the Tecuya Ridge Project Violates the Roadless Rule

Although the Forest Service has provided the stand data found missing by this Court in *Tecuya I*, that decision contained multiple additional grounds for reversal that were not meaningfully or adequately addressed in the Forest Service's decision reaffirming its "generally small diameter timber" finding on remand. *See Tecuya I*, 25 F.4th at 654-59. Because the agency has again failed to "articulate a satisfactory explanation for its action," and its "determination that the Project is

consistent with the Roadless Area Conservation Rule" is once again "not sustainable on the current administrative record," this Court should vacate and remand this second unlawful and arbitrary decision to the Forest Service for further consideration. *Tecuya I*, 25 F.4th at 657, 659 (quoting *State Farm*, 463 U.S. at 168).

### 1. The Los Padres Land Management Plan Definition of "Large Tree"

The Los Padres Land Management Plan defines large-diameter trees as those over 24 inches. *Tecuya I*, 25 F.4th at 657. In light of this definition, *Tecuya I* stated that "the Court cannot determine why, in the Forest Service's view, the difference between a 'generally small' tree and a 'large-diameter tree' is merely three inches because the Forest Service has failed to provide any information that would help the Court to do so." *Id*. at 657-58. The Court concluded that "[i]ndeed," the Land Management Plan's "declaration that 24-inch dbh trees are large-diameter trees leads the Court to conclude that a 21-inch dbh tree is, at best, a medium-sized tree, not a 'generally small' tree as contemplated by the Roadless Rule." *Id*. at 658.

The Forest Service's decision on remand fails to address this contradiction at all, let alone set forth a satisfactory explanation for it. Although the agency acknowledges that the "determination of what constitutes 'generally small diameter timber' is made through the project specific NEPA analysis and the Forest's land management plan" (ER-46), its analysis is otherwise bereft of any reference to the

15

Land Management Plan, and does not even attempt to explain how the agency can reconcile defining trees up to 21 inches as "generally small" in relation to a Forest Plan that defines "large" trees as 24 inches. Such a failure to proffer a "rational connection between the facts found and the choice made" constitutes arbitrary and capricious decision-making. *State Farm*, 463 U.S. at 43.

### 2. The Adjacent Frazier Mountain Project

In *Tecuya I*, this Court also found that "evidence available in the record tends to confirm that trees of up to 21-inches dbh are not 'generally small'" because "for another nearby project, the Frazier Mountain Project, the Forest Service noted that 'larger diameter' trees were those with a dbh greater than ten inches." 25 F.4th at 658. Although the Forest Service attempted to argue that this adjacent project "is irrelevant here because that project thinned timber stands primarily overstocked with different tree species—Jeffrey pine," the Court stated it "is not convinced," noting that Jeffrey pine "is a component of mixed-conifer forests and a type of tree found within the Tecuya Project area." *Id*.

The Court went on to further conclude that "[e]ven assuming that the stand composition in the Frazier Mountain Project area differs substantially from the stand composition in the Tecuya Ridge Project Area," the Forest Service had nonetheless "failed to provide any data comparing the average dbh of trees within the Frazier Mountain Project area with the average dbh of trees in the Tecuya

Ridge Project area to support its conclusion that 'small' trees in the Tecuya Ridge are much larger than even the 'large' trees on Frazier Mountain." *Id*. The Court explained that had the Forest Service "shown that trees on Frazier Mountain have a generally smaller dbh on average than the mixed conifer and pinyon-juniper trees on the Tecuya Ridge, the Court might have deferred to its determination that trees of up to 21 dbh ... in the Project area are properly considered 'small.'" *Id*.

The data the Forest Service has produced on remand, instead of showing that trees on Frazier Mountain are smaller on average, shows that those trees are *larger* on average, than the trees found on Tecuya Ridge, thus further confirming that 21-inch trees cannot rationally or lawfully be characterized as "smaller" within the Antimony IRA. ER-78 (chart showing the average diameter, referred to as "QMD", for each stand in the Frazier Mountain Project area as being 9 inches or greater as compared to the 7.2-inch average tree size in the Tecuya Ridge Project area).

Faced with this evidence, the Forest Service no longer attempts to distinguish the Frazier Mountain project definition of "smaller" trees. Instead, the agency has concocted an entirely new rationale by now critiquing its own Frazier Mountain decision as leaving "two-thirds of the project stands at risk to imminent mortality from bark beetle attacks" and asserting that that trees "began to die off at alarming rates, including within the lower elevations of the Frazier Mountain

17

Project." ER-52.

There are multiple problems with this newly minted explanation. First, it effectively concedes, rather than addresses, the inconsistency between the definition of smaller trees in the Frazier Mountain Project and that employed in this case. Accordingly, it is irrelevant to the shortcomings identified by this Court in *Tecuya I*. Second, the Forest Service's shifting winds of explanation are strongly suggestive of a predetermined outcome in search of some justification, which itself points to arbitrary and capricious decision-making. Third, and relatedly, these rationales are nowhere substantiated in the record. The post-decision Memo prepared on remand in fact sets forth no data to support the agency's new-found critique of its own prior decision. As this Court has admonished, reviewing courts "cannot defer to a void." *Or. Nat. Desert Ass'n v. BLM*, 531 F.3d 1114, 1142 (9th Cir. 2008).

### 3. Risk of Wildfire

The *Tecuya I* Court further found that the Forest Service failed to "apply its technical expertise to determine which 'generally small' trees pose an uncharacteristically high risk of fire spread and intensity," or to explain "why 21-inch dbh trees, specifically, are creating the risk of wildfire the Project seeks to ameliorate." 25 F.4th at 658-59.

18

Here too, the Forest Service's analysis on remand fails to remedy the lack of analysis or establish consistency with the Roadless Rule, which requires that overstory trees are to be left standing. 66 Fed. Reg. at 3,258 (ER-101). Notably, the agency's own "Fire/Fuels Report" states that the fuel types in the Tecuya Ridge Project area include "small tree understory" (ER-57, Table 3), but nothing larger than that.

The Forest Service makes no effort to address its own Fire/Fuels Report, instead asserting, with no evidence at all, that "[t]reating the 0-14 [inch] diameter trees within the stand will accomplish the goal of reducing the ground and ladder fuels but will not limit the impacts of a fire if it reaches the crowns of the trees." ER-50. The agency asserts that, "[f]rom the stand exam data and project analysis, it was determined that thinning up to 21 [inches] diameter would break up the crown fuels enough to help prevent the spread of fires if established within the crowns of the trees." *Id*. However, no actual data or analysis is provided in the revised Decision Memo to justify this conclusion, and again, it directly contradicts the agency's Fire/Fuels Report as well as the language of the Roadless Rule.

Moreover, while the Forest Service claims it is only "proposing to thin a limited number of trees that fall within the 14-28 [inch] diameter class," in fact, their own data shows that, across the 1,100-acre Project area within the Antimony IRA, over 3,000 trees between 14-21 inches in diameter are slated to be removed.

19

ER-46-47 (Table 1, showing the Project allows the logging of 3.03 trees per acre with respect to trees 14-21 inches in diameter). The agency also nowhere explains why so many trees between 14-21 inches must be logged even though there are relatively few of these trees to begin with—just 4 percent of the existing trees in the Project area are 14-22 inches in diameter.[4] ER-47 (Figure 1). In short, not only does the Forest Service fail to justify why trees between 14-21 inches must be logged to address wildfire, or how they qualify as "overgrown," the agency's own data contradicts their conclusions. *See State Farm*, 463 U.S. at 43 (agency decision is arbitrary and capricious when it "runs counter to the evidence before the agency").

### B. The Forest Service's "Growth Potential" Rationale is Arbitrary and Capricious

Instead of addressing the distinct bases of the decision in *Tecuya I*, the Forest Service largely rests its reaffirmed determination to log 21-inch trees on its newly minted rationale—the so-called "growth potential" analysis. ER-49. In contrast to its rationale in *Tecuya I* (where the agency had attempted to distinguish its "smaller tree" definition in the adjacent Frazier Project area by falsely asserting that the Tecuya Ridge Project mixed conifer forests are not primarily comprised of Jeffrey pine), the agency now acknowledges that Jeffrey pine is indeed "the

---

[4] There are currently 14.4 trees per acre between 14 and 22 inches in diameter, and 342 trees per acre total (i.e., between 0 and 44 inches dbh). 14.4/342=0.04.

dominant tree species," but asserts that "the current mean tree size" of that tree species "within the areas proposed for thinning is extremely small" when compared to its "growth potential." *Id*.

As further detailed in the revised Decision Memo, the Forest Service asserts that Jeffrey pine stands in the Tecuya Ridge Project area "were logged in the 1930s and the 1960s, and the old, large-diameter trees that were present prior to logging are now gone." ER-49. According to the Forest Service, "[m]ost of the larger Jeffrey pines within the treatment areas are small-to-medium in size for the species' size potential," and thus, according to the Forest Service's convenient reasoning, "all of the trees to be thinned are relatively small compared to the species' potential on this site." *Id*.

Although the Court stated in *Tecuya I* that it does not "not require the Forest Service to undertake any particular method of providing a reasoned explanation for its choice to designate trees of up to 21-inches dbh as 'generally small,'" 25 F.4th at 659, the explanation must, at minimum, qualify as "reasonable." Deference to an agency's expertise, however, "does not mean acquiescence," *Presley v. Etowah County Comm'n*, 502 U.S. 491, 508 (1992), and "courts should reject interpretations of statutes or regulations which produce an unjust, unreasonable, or absurd result." *See Maceren v. Dist. Dir., Immigration & Naturalization Serv.*, 509 F.2d 934, 941 (9th Cir. 1974) (internal citations and quotations omitted). Here,

allowing the Forest Service to use, for the first time, "growth potential" as the mechanism for determining which trees are "generally small diameter timber" would produce unreasonable, counter-textual, and even absurd, results.

As recently emphasized by the Supreme Court, while historically courts had "often deferred to agencies' reasonable readings of genuinely ambiguous regulations" (referred to as *Auer* deference), *Auer* deference "often doesn't" apply. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2408, 2418 (2019). In clarifying *Auer* deference, *Kisor* explains that "[f]irst and foremost, a court should not afford *Auer* deference unless the regulation is genuinely ambiguous." *Id*. at 2415. To determine genuine ambiguity, a court "must carefully consider the text, structure, history, and purpose of a regulation, in all the ways it would if it had no agency to fall back on," and "must exhaust all the traditional tools of construction." *Id*.; *see also Amazon.com, Inc. v. Comm'r*, 934 F.3d 976, 992 (9th Cir. 2019) ("Genuine ambiguity is not determined by examination of the regulatory text alone.").

Here, the Roadless Rule is not "genuinely ambiguous" with respect to the Forest Service's new classification of a tree as small merely because over time it will inevitably get larger. But even if there were some ambiguity on this score, which there is not, the Forest Service's new "growth potential" rationale is patently unreasonable. *See Kisor*, 139 S. Ct. at 2415 (explaining that even when "genuine ambiguity remains, . . . the agency's reading must still be reasonable").

To begin with, the Roadless Rule's plain text makes no mention of relying on "growth potential" or any other vaguely defined future conditions to determine the meaning of what constitutes "generally small diameter timber" for logging operations proposed today. Instead, the Rule's text and history is laser focused on "areas that have become overgrown with smaller diameter trees." *Tecuya I*, 25 F.4th at 659; 66 Fed. Reg. at 3,257 (ER-100). Further, the Rule's structure favors an overall prohibition on logging (*Tecuya I*, 25 F.4th at 655), and therefore, under traditional tools of construction, the exception for "generally small diameter timber" should be construed "narrowly in order to preserve the primary operation of the provision." *United States v. Singh*, 979 F.3d 697, 726 (9th Cir. 2020) (quoting *Comm'r v. Clark*, 489 U.S. 726, 739 (1989)). In looking to purpose, the Roadless Rule was enacted, in large part, to protect the relatively small amounts of unroaded National Forest areas from the type of expansive logging operations proposed under the Tecuya Ridge Project. And during the Rule's promulgation, the agency emphasized that the exceptions to the general logging prohibition are intended to be invoked only in "rare" and "infrequent" situations. 36 C.F.R. § 294.13, 66 Fed. Reg. at 3,258, 3,273 (ER-101, 116).

The Forest Service's "growth potential" framework used here—which the agency never once previously even mentioned as a consideration in years of project planning and initial approval—violates the core safeguards in the Roadless

23

Rule by creating a capacious definition of "generally small" trees that is entirely
untethered to whether the project area in question is actually "overgrown with
smaller diameter trees." *Tecuya I*, 25 F.4th at 659; 66 Fed. Reg. at 3,257 (ER-100).
A tree's future growth potential has no connection to whether a forested area has
become overgrown with a particular sized tree, nor does growth potential comply
with the Rule's purpose of ensuring that overstory trees will be left intact—instead,
medium-sized trees, and even very large trees, that make up the existing overstory
in a particular forest stand could potentially be considered "small" as compared to
their future growth potential, and therefore logged. Accordingly, far from
establishing a "rare" or "infrequent" basis for cutting trees, the Forest Service's
new justification creates a gaping loophole in the protections afforded by the
Roadless Rule.

The general inherent arbitrariness of the growth potential approach is further
exacerbated by the utter lack of record evidence supporting the Forest Service's
assertions regarding the growth potential of Jeffrey pine in this particular area of
the Antimony IRA. Along with Land Management Plan direction, discussed *supra*,
site-specific characteristics are the primary guiding lodestars for determining
whether a project is targeting generally small diameter timber sufficient to
constitute one of the rare, infrequent exceptions to the Roadless Rule's general
prohibition on logging. In this case, the record contains no evidence that the

24

currently existing tree size distribution in the Project area (0-42 inches dbh (ER-46)) is substantially deviated from historical conditions, and thus, the asserted growth potential of 90 inches dbh may not be accurate for this particular area.

As this Court held in *Tecuya I*, although the Forest Service "may indeed apply its technical expertise" in determining what constitutes "generally small" trees, it must provide evidence "that it has actually performed the technical analysis necessary to identify them." 25 F.4th at 658. While the agency asserts that "Jeffrey pines can grow up to 60-90 [inches] DBH under ideal site conditions" (ER-49), it has presented no technical analysis, modeling, or other information that *this particular area* (*i.e.*, that portion of the Antimony IRA that will be logged) constitutes such ideal site conditions, nor has it presented record evidence that trees of this size were logged in the 1930s and the 1960s. Because the Forest Service fails to substantiate its assertions, the agency's claimed growth potential of Jeffrey pine within the Antimony IRA should be rejected as arbitrary. *State Farm*, 463 U.S. at 43 (court cannot determine if an agency has "offered an explanation for its decision that runs counter to the evidence before the agency" when it fails to present such evidence).

### C. The Word "Generally" Cannot be Viewed in Isolation

Finally, the Forest Service argues that the word "generally" allows the agency to log larger trees because "even if some of the trees to be thinned were to

be considered 'medium' in size, the project focuses on the removal of small trees and therefore thins '*generally* small diameter' trees, consistent with roadless rule." ER-49 (emphasis in original). By reading the word "generally" in isolation, the Forest Service seeks to log medium, or even large, trees under the rubric of logging mostly small trees.

This argument fails as well because it entirely ignores the Roadless Rule's intent to limit logging to overgrown trees in the understory. Under the Forest Service's approach, *any* tree, no matter how large or valuable to the functioning of the ecosystem, could be logged as long as the majority of trees logged are small. In fact, under the agency's framework, the more small trees the agency logs, the more medium or large trees it can log. As the Forest Service's newly presented stand data confirms, the Tecuya Ridge Project area is overwhelmingly dominated—95 percent—by trees smaller than 14 inches, and 99 percent of the trees are smaller than 21 inches. ER-47 (Figure 1). Despite this lopsided distribution, the Forest Service nonetheless proposes to remove more than 15 percent of the few larger (>14 inches) trees that currently exist. ER-46-47.

There is nothing rational, let alone ecologically sound, about the Forest Service allowing the logging of many larger trees simply because the agency is logging a greater number of small trees too. To the contrary, where, as here, there are relatively few larger trees, that is all the more reason to preserve them.

26

Consequently, this argument too should be rejected because it violates the purpose of the Roadless Rule and would create unreasonable results.

## CONCLUSION

For the foregoing reasons, the Tecuya Ridge revised Decision Memo "is not sustainable on the administrative record," and therefore "must be vacated and the matter remanded . . . for further consideration." *Tecuya I*, 25 F.4th at 659.

Respectfully submitted this 24th day of April, 2023,

*/s/ Justin Augustine*

_____

Justin Augustine
Brian Segee

*Attorneys for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Federal Rule of Appellate Procedure 32 and Ninth Circuit Rule 32-1, the foregoing opening brief is proportionately spaced, has a typeface of 14 points, and contains 6,277 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

*/s/ Justin Augustine*

_____

Justin Augustine
Brian Segee

*Attorneys for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Justin Augustine*
_____
Justin Augustine
Brian Segee

*Attorneys for Plaintiffs-Appellants*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**  | 23-55054

I am the attorney or self-represented party.

**This brief contains** | 6,277 | **words,** including | | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated | | .

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Justin Augustine | **Date** | April 24, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                        *Rev. 12/01/22*

## ATTACHMENT A:

## ADDENDUM TO PLAINTIFFS-APPELLANTS' OPENING BRIEF*

## TABLE OF CONTENTS

**Statutes**

5 U.S.C. § 706 ............................................................................................2

**Code of Federal Regulations**

36 C.F.R. § 294.13 ......................................................................................3

**Federal Register**

66 Fed. Reg. 3,244 (Jan. 12, 2001) ...........................................................3

_____

*Relevant provisions of each citation are excerpted where possible.

Addendum Page 1

**5 U.S.C § 706**

**§ 706. Scope of review**

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall--

(1)  compel agency action unlawfully withheld or unreasonably delayed; and

(2)  hold unlawful and set aside agency action, findings, and conclusions found to be--

> (A)  arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (B)  contrary to constitutional right, power, privilege, or immunity;
>
> (C)  in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>
> (D)  without observance of procedure required by law;
>
> (E)  unsupported by substantial evidence in a case subject to sections 556 and 557 of this title [5 USCS §§ 556 and 557] or otherwise reviewed on the record of an agency hearing provided by statute; or
>
> (F)  unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

# 36 C.F.R. § 294.13

**§ 294.13 Prohibition on timber cutting, sale, or removal in inventoried roadless areas.**

(a) Timber may not be cut, sold, or removed in inventoried roadless areas of the National Forest System, except as provided in paragraph (b) of this section.

(b) Notwithstanding the prohibition in paragraph (a) of this section, timber may be cut, sold, or removed in inventoried roadless areas if the Responsible Official determines that one of the following circumstances exists. The cutting, sale, or removal of timber in these areas is expected to be infrequent.

> (1) The cutting, sale, or removal of generally small diameter timber is needed for one of the following purposes and will maintain or improve one or more of the roadless area characteristics as defined in § 294.11.
>
> > (i) To improve threatened, endangered, proposed, or sensitive species habitat; or
> >
> > (ii) To maintain or restore the characteristics of ecosystem composition and structure, such as to reduce the risk of uncharacteristic wildfire effects, within the range of variability that would be expected to occur under natural disturbance regimes of the current climatic period;

\*\*\*

# 66 Fed. Reg. 3244 (Jan. 12, 2001)

The Roadless Rule Federal Register document can be found at ER-86-116.