No. 23-55054

UNITED STATES CIRCUIT COURT OF APPEALS
FOR THE NINTH CIRCUIT

LOS PADRES FORESTWATCH, a non-profit organization, CENTER FOR
BIOLOGICAL DIVERSITY, a non-profit organization; and EARTH ISLAND
INSTITUTE, a non-profit organization,

*Plaintiffs and Appellants*

*vs.*

U.S. FOREST SERVICE, CHRISTOPHER STUBBS, in his official capacity as
Supervisor of the Los Padres National Forest, and the U.S. FISH AND WILDLIFE
SERVICE,

*Defendants and Appellees,*

*and*

AMERICAN FOREST RESOURCE COUNCIL, a non-profit corporation,
CALIFORNIA FORESTRY ASSOCIATION, a nonprofit corporation, and
ASSOCIATED CALIFORNIA LOGGERS, a non-profit corporation,

*Defendant-Intervenors and Appellee-Intervenors*

APPEAL FROM DENIAL OF MOTION FOR SUMMARY JUDGMENT

By the United States District Court, Central District of California
Honorable Virginia A. Phillips, U.S. District Judge

**APPELLANTS' REPLY BRIEF**

Justin Augustine
1212 Broadway, Suite 800
Oakland, CA 94612
(916) 597-6189
jaugustine@biologicaldiversity.org

Brian Segee
226 W. Ojai Ave., Ste. 101-442
Ojai, CA 93023-3278
(805) 750-8852
bsegee@biologicaldiversity.org

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................1

ARGUMENT .....................................................................................................2

I. APPELLEES OVERSTATE THE DEFERENCE OWED BY THE COURT TO THE FOREST SERVICE'S DECISION ..........................................................2

II. DEFENDANTS' BRIEFS FAIL TO DEMONSTRATE THAT THE FOREST SERVICE'S "GROWTH POTENTIAL" ANALYSIS IS A REASONABLE APPROACH TO DEFINING "GENERALLY SMALL DIAMETER TIMBER" ON THE TECUYA RIDGE PROJECT AREA. ............................................................................4

III. THE FOREST SERVICE HAS NOT RATIONALLY EXPLAINED HOW ITS DECISION IS INFORMED BY FOREST PLAN AND SITE-SPECIFIC INFORMATION. .............12

CONCLUSION ...................................................................................................16

# TABLE OF AUTHORITIES

## <u>Cases</u>

*All. for the Wild Rockies v. Christensen*,
663 F. App'x 515 (9th Cir. 2016)................................................................6

*All. for the Wild Rockies v. Krueger*,
950 F. Supp. 2d 1196 (D. Mont. 2013) ..................................................6

*All. for the Wild Rockies v. United States Forest Serv.*,
907 F.3d 1105 (9th Cir. 2018)................................................................2

*Auer v. Robbins*,
519 U.S. 452 (1997) .............................................................................3

*Burlington Truck Lines v. United States*,
371 U.S. 156 (1962) ...........................................................................12

*Butte County v. Hogen*,
613 F.3d 190 (D.C. Cir. 2010) ............................................................11

*Cal. PUC v. FERC*,
879 F.3d 966 (9th Cir. 2018)...............................................................15

*Fed. Power Comm'n v. Transcon. Gas Pipe Line Corp.*,
423 U.S. 326 (1976) ...........................................................................15

*Kisor v. Wilkie*,
139 S. Ct. 2400 (2019) .........................................................................3

*Los Padres ForestWatch v. United States Forest Serv.*,
25 F.4th 649 (9th Cir. 2022)................................ 1, 4, 6, 7, 12, 13, 14, 16

*McOmie-Gray v. Bank of Am. Home Loans*,
667 F.3d 1325 (9th Cir. 2012).............................................................16

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*,
463 U.S. 29 (1983) ........................................................................ 2, 11

*Nat. Res. Def. Council, Inc. v. United States EPA*,
966 F.2d 1292 (9th Cir. 1992)..............................................................10

*Nat'l Urban League v. Ross*,
977 F.3d 770 (9th Cir. 2020)..................................................................2

*Pub. Media Ctr. v. FCC*,
587 F.2d 1322 (D.C. Cir. 1978) ..........................................................12

*San Luis Obispo Mothers for Peace v. United States NRC*,
  789 F.2d 26 (D.C. Cir. 1986) ...............................................................11

*Skidmore* v. *Swift & Co.*,
  323 U.S. 134, 140 (1944) ......................................................................4

*Thomas Jefferson Univ. v. Shalala*,
  512 U.S. 504 (1994) .............................................................................3

*United States* v. *Mead Corp.*,
  533 U.S. 218 (2001) .............................................................................3

## Regulations

36 C.F.R. § 294.13 ...................................................................................7

## Other Authorities

66 Fed. Reg. 3244 (Jan. 12, 2001) ......................................................4, 5

## INTRODUCTION

Appellants' opening brief explained that the U.S. Forest Service has, for a second time, unlawfully approved the proposed logging of the Antimony Inventoried Roadless Area ("Antimony IRA") on southern California's Los Padres National Forest. Instead of addressing the issues with the agency's analysis identified in *Los Padres ForestWatch v. United States Forest Serv.*, 25 F.4th 649 (9th Cir. 2022) ("*Tecuya I*"), the Forest Service has again failed to articulate a lawful and rational explanation for its determination that the cutting of thousands of trees as large as 21-inches in diameter can be characterized as "generally small diameter timber," such that the project qualifies as one of the "rare" and "infrequent" exceptions to the Roadless Rule's general prohibition on logging. *Tecuya I*, 25 F.4th at 655-659.

Although the agency for the first time provided stand data—showing that the project landscape is overwhelmingly dominated (95 percent) by trees smaller than 14-inches—the Forest Service then ignored this data in making its determination. It instead relied on a freshly minted "growth potential" analysis, under which the agency concluded that *every tree* on the Tecuya Ridge project area is "small," thereby eviscerating the Roadless Rule's general logging prohibition.

As addressed below, Federal Defendants' and Defendant-Intervenors' briefs fail to present any rational basis demonstrating use of the growth potential

1

approach as valid. For these and other reasons detailed below, Appellants respectfully request this Court to reverse the District Court's order (ER-5-22) and the Forest Service's revised Decision Memo (ER-23-52) and remand this second decision to the agency.

## ARGUMENT

### I. Appellees Overstate the Deference Owed by the Court to the Forest Service's Decision

Defendants gloss over the deference due to the Forest Service's decision. *See, e.g.*, Defs.' Br. at 13 (stating deference under APA review is "highly deferential."). All agencies—including the Forest Service—must articulate a satisfactory *explanation* for their actions. *All. for the Wild Rockies v. United States Forest Serv.*, 907 F.3d 1105, 1112 (9th Cir. 2018) (an agency must "examine the relevant data and articulate a satisfactory explanation for its action.") (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983)); *Nat'l Urban League v. Ross*, 977 F.3d 770, 779 (9th Cir. 2020) ("The record before us shows little evidence of that reasoning, nor does it show that the Secretary examined the relevant data and articulated a satisfactory explanation for his decision, including a rational connection between the facts found and the choice made.") (internal quotations and citations omitted).

Because the legality of the Forest Service's Roadless Rule analysis turns on its interpretation of the phrase "generally small diameter timber," that interpretation is generally considered under principles of *Auer* deference. *Auer v. Robbins*, 519 U.S. 452, 461-63 (1997). As Appellants' opening brief detailed, however, under *Kisor v. Wilkie*, 139 S. Ct. 2400, 2418 (2019), *Auer* deference does not apply unless the regulation is genuinely ambiguous, as determined by a careful consideration of the text, structure, history, and purpose of a regulation. Plfs.' Br. at 22. Here, because the growth potential analysis would create an enormous exception to the Roadless Rule's general prohibition on logging by characterizing every tree as "small diameter," the analysis is unambiguously at odds with the Rule, and thus is not entitled to *Auer* deference. *Id.*

Even if the regulation is determined to be ambiguous, the court may defer only to an agency interpretation that is "reasonable," *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 515 (1994), in the sense that it falls within the permissible "zone of ambiguity" created by the regulation. *Kisor*, 139 S. Ct. at 2415-16; see also *United States* v. *Mead Corp.*, 533 U.S. 218, 228 (2001) ("We instead accord the Department's interpretation a measure of deference proportional to the 'thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade.'") (quoting *Skidmore* v. *Swift & Co.*, 323 U.S. 134, 140

3

(1944)). The Forest Service's reliance on the growth potential analysis to define "generally small diameter" timber on the Tecuya Ridge project area was unreasonable under any threshold of deference.

## II. Defendants' Briefs Fail to Demonstrate that the Forest Service's "Growth Potential" Analysis Is a Reasonable Approach to Defining "Generally Small Diameter Timber" on the Tecuya Ridge Project Area.

It is undisputed that the Roadless Rule does not define the phrase "generally small-diameter timber." 66 Fed. Reg. 3244, 3257 (Jan. 12, 2001) (ER-100) ("Because of the great variation in stand characteristics between vegetation types in different areas, a description of what constitutes 'generally small diameter timber' is not specifically included in [the Roadless] rule."). However, counter to the impression given by Defendants' and Intervenors' briefs, the Roadless Rule's promulgation did not leave a complete vacuum as to the phrase's meaning. Instead, the Forest Service clarified during the rulemaking process that the determination is "best made" through Forest Plan or project-specific analysis. *Id.*; *Tecuya I*, 25 F.4th at 656-57 (determinations of "what constitutes 'generally small diameter timber' … are best made through project specific or land and resource management plan NEPA analyses.").

Here, Defendants urge the Court to accept an interpretation that casts aside these reference points in favor of the "growth potential" approach. While

Defendants make much of the court's statement in *Tecuya I* that it "does not require the Forest Service [on remand] to undertake any particular method of providing a reasoned explanation for its choice to designate trees of up to 21-inches dbh as 'generally small,'" Defs.' Br. at 7-8, 12, 24, 28, the Forest Service's newly minted growth potential lens is nonetheless an arbitrary analytical approach untethered to the language or intent of the Roadless Rule, and should be afforded no deference.[1]

Most evidently, the growth potential approach unquestionably undermines the broader intent of the Roadless Rule "to limit the cutting, sale, or removal of timber that have been overgrown with smaller diameter trees," but "while leaving the overstory trees intact." 66 Fed. Reg. at 3257, 3258 (ER-100, 101). Under this approach, the Forest Service uses the tree's estimated maximum tree size under idealized conditions as the central reference point for determining the meaning of small diameter. ER-49.

The application of the growth potential lens thus will inherently typically result—as it does in this case—in *every tree* on the project area being characterized as "small." Defs. Br. at 11. On the Tecuya Ridge project, the agency's estimate of

---

[1] Appellants are unaware of any prior roadless area analysis that has relied on the growth potential approach utilized by the Forest Service on the Tecuya Ridge remand.

90-inch diameter at breast height ("dbh") potential size for the Jeffrey Pine that will be the focus of logging is *more than double* the size of the very largest existing trees on the site, which are highly rare across a landscape dominated by much smaller trees with an average diameter of only 7 inches dbh. Defs.' Br. at 15 (stating that "[a]ll of those trees [on the project area] are *much smaller* than the 60-90-inch dbh growth potential of the relevant species in this region.") (emphasis added).

Defendants attempt to downplay the significance of defining every tree as "small" by arguing that "the structure of the Roadless Rule prevents" Appellants' alleged "hypothetical," "extreme," and "unrealistic … scenario" because *separate* Roadless Rule requirements may prevent larger trees from being cut. See Defs.' Br. at 18 (stating that logging of all remaining large trees on the project area "very likely would not maintain the characteristics of ecosystem composition and structure, and also likely would not improve habitat conditions for species of conservation concern."). However, "[w]hether the [Forest] Service may harvest timber in an inventoried roadless area is a *three-step inquiry*." *Tecuya I*, 25 F.4th at 656 (quoting *All. for the Wild Rockies v. Krueger*, 950 F. Supp. 2d 1196, 1214 (D. Mont. 2013), *aff'd sub nom. All. for the Wild Rockies v. Christensen*, 663 F. App'x 515 (9th Cir. 2016) (emphasis added). "First, the timber to be harvested must be 'generally small diameter.' Second, the harvest must be needed for one of two

6

listed purposes [as defined in 36 C.F.R. § 294.13]. Third, the harvest must maintain or improve one or more of the roadless area characteristics as defined in § 294.11." *Id*. Defendants' interpretation allows the harvesting of an unlimited number of any sized tree if the project meets the *other* criteria, effectively eliminating the "generally small diameter" limitation and thus arbitrarily turning the "three-step inquiry" into a two-step inquiry.

In addition to the arbitrary results of applying the growth potential approach, the Forest Service has offered no meaningful explanation or support for its decision to abandon its determination of "generally small diameter timber" by a commonsense and straightforward reference to average tree diameter under current conditions. The agency states only that "[t]he average tree diameter within a stand is generally not a good indicator of what is a small or large diameter tree for a particular tree species or growing area," because "the management history or disturbance history of a site often skews a stand's diameter distribution in a manner that undermines the utility of using the existing diameter distribution as an indication of what are 'small,' 'medium,' and 'large' trees." Defs.' Br. at 19. Nowhere in this circular rationale does the agency explain *how* the management and disturbance history (which exists at *every* Roadless area) "undermines" the existing diameter lens, or *why* an alternative analysis that categorizes *every existing tree as 'small' or even 'very small'* is a superior approach.

7

Defendants attempt to distract from the lack of rational explanation in the record, stating that the average-diameter approach "could result in situations in which there is clear fire hazard, thinning would reduce the fire hazard, and the trees on the site are very small by most standards, but no action could be taken." Defs.' Br. at 19; see also Defs.' Br. at 9 (describing a hypothetical site "that was affected by a catastrophic fire a few years earlier, [in which] all the trees might be between 1- and 3-inches dbh, with an average size of 2-inches dbh, but that does not mean that a 3-inch tree would properly be characterized as 'large' because it would be so much smaller than the species' growth potential.")

These hypotheticals carry little weight for the Forest Service, as they have no relation to the administrative record before the Court. Although the Tecuya Ridge area is dominated (93.7 percent) by smaller trees (0-14 inches dbh), it also has a rare but important (5.8 percent) component of larger trees (14-28 inches dbh) and a very small (<1 percent) number of trees larger than 28 inches. ER-46. Unlike Defendants' self-serving hypotheticals, where size classification is of limited utility given the lack of variation in size and absence of *any* larger trees, the record *here* shows a variation in size classes, demonstrating that the average tree diameter approach provides a clear basis for rationally addressing the meaning of "small diameter timber" on the Tecuya Ridge project area.

Defendants further argue that even if some of the trees to be cut could be considered "medium," the Forest Service would not run afoul of the generally small diameter limitation because an estimated 98.5 percent of the proposed trees to be cut fall within the 0–14-inch dbh size class. Defs.' Br. at 9. However, because of the existing baseline rarity of any trees larger than this size, even though the cutting of trees from 14–21-inch dbh comprises 1.5 percent of the total trees cut, that cutting comprises approximately 15 percent (or approximately 1 out of 7 trees) of the already greatly-diminished number of trees larger than 14 inches. In contrast, the Forest Service will take a relatively light touch with the smallest trees that pose the greatest fire risk, leaving nearly 80 trees per acre in the 0–2-inch dbh size class, and more than 100 trees per acre between 0-8 inches dbh. ER-47.

Even if the growth potential analytical approach was a valid approach to determining small diameter timber (it is not), the Forest Service has failed to provide any data or evidence that the existing tree size distribution (0-42-inches dbh) (ER-46) is significantly different from historical conditions on the Tecuya Ridge area. Nor has the Forest Service identified any historical evidence or data in the record that the trees on the project area have reached or ever could reach the 60-90 inch dbh "growth potential" the agency relies upon.

The record is equally bereft of any evidence in support of the agency's claim that the Antimony Roadless Area was logged of its largest trees in the 1930s and

9

1960s, a particularly noteworthy omission given the inherent undeveloped nature of roadless areas. Defendant-Intervenors attempt to justify this absence by stating that "NEPA does not require the agency to provide citations to every single assertion in its NEPA analysis." Def-Int. Br. at 40, n. 10. This attempt is unavailing, as Plaintiffs are alleging a violation of the Roadless Rule, not NEPA, and the 60-90 inch dbh estimate is central to the Forest Service's growth potential analysis and conclusion that every tree on the Tecuya Ridge area is "small." The agency's failure to provide any support for this estimate—provided for the first time on remand—is thus arbitrary. *Nat. Res. Def. Council, Inc. v. United States EPA*, 966 F.2d 1292, 1305-1306 (9th Cir. 1992) ("Without supportable facts, we are unable to rely on our usual assumption that the [agency] has rationally exercised the duties delegated to it by Congress … Without data supporting the expanded exemption, we owe no deference to [the agency's] line-drawing.").

There is, however, record evidence that helps demonstrate the unreasonableness of using trees between 60-90 inches dbh as a yardstick. For example, in the 1995 study "Sixty Years of Change in Californian Conifer Forests of the San Bernardino Mountains," the authors utilized 68 plots of forested vegetation that had been quantitatively (*i.e.*, by size class) described in 1929-1935 to document changes in tree density by both species and size class approximately 60 years later. Using this data, the authors categorized historic and present tree size

10

class distribution for species including Jeffrey pine by four classes: 10-30 cm; 30-60 cm; 61-91 cm; and >91 cm. The largest size class, 91 cm, is equal to approximately 36-inches dbh, a size generally consistent with existing stand distributions (0-42 inches dbh) on the Tecuya Ridge area. FER 1-3 to FER 1-16 (largest size class 91 cm, or approx. 36-inch dbh).[2]

Defendants counter that Plaintiffs "cite to no authority to support the notion that the Forest Service is required to provide a scientific citation for every ecological fact in a NEPA document." Defs.' Br. at 20. Plaintiffs present no such argument, but instead contend that the agency's Roadless Rule analysis is counter to bedrock APA principles: the Forest Service failed to articulate a "rational connection between the facts found and the choices made." *State Farm,* 463 U.S. at 43. An agency's duty of "reasoned decisionmaking … stems directly from § 706 of the APA" and "is not a procedural requirement." *Butte County v. Hogen*, 613 F.3d 190, 195 (D.C. Cir. 2010); see also *San Luis Obispo Mothers for Peace v. United States NRC*, 789 F.2d 26, 48 (D.C. Cir. 1986) ("An agency cannot fulfill the requirement of an adequate explanation merely by insisting that its conclusions are rational and supported by the record. Instead, it must give the court 'the rationale underlying the importance of factual distinctions as well as the factual distinctions

---

[2] A 90-inch dbh Jeffrey Pine tree would qualify as a "remarkable specimen." See, e.g., https://www.conifers.org/pi/Pinus_jeffreyi.php.

themselves.'") (quoting *Pub. Media Ctr. v. FCC*, 587 F.2d 1322, 1332 (D.C. Cir.

1978)); *Burlington Truck Lines v. United States*, 371 U.S. 156, 158 (1962) (the

agency must consider "relevant factors" and articulate "a rational connection

between the facts found and the choices made."). Here, the Forest Service's record

provided no data or record evidence supporting its contention that 60-90 inches

dbh is an accurate historical reference point for the Tecuya Ridge area.

### III. The Forest Service Has Not Rationally Explained How Its Decision Is Informed by Forest Plan and Site-Specific Information.

Although not specifically defined, the meaning of "generally small-diameter

timber" in relation to any proposed timber cutting project within an inventoried

roadless area is "best made" through Forest Plan or project-specific analysis.

*Tecuya I*, 25 F.4th at 656-57 (determinations of "what constitutes 'generally small

diameter timber' … are best made through project specific or land and resource

management plan NEPA analyses."). As discussed in Appellants' opening brief,

and further detailed by the Court in *Tecuya I*, neither of these sources reasonably

supports the Forest Service's conclusion that trees as large as 21 inches qualify as

"reasonably small diameter" within the Tecuya Ridge project area.

With respect to the Forest Plan, the governing Plan for the Los Padres

National Forest defines trees 24 inches in diameter as "large." *Tecuya I*, 25 F.4th at

657. As noted by the Ninth Circuit in *Tecuya I*, the Forest Service has not

adequately explained why "the difference between a 'generally small' tree and a 'large-diameter' tree is merely three inches," and that the definition "leads the Court to conclude that a 21-inch dbh tree is, at best, a medium-sized tree, not a 'generally small' tree as contemplated by the Roadless Rule." *Id*. at 658. The Court in *Tecuya I* also noted the agency's failure to explain how the data supported its determination generally. *Id*. ("In fact, the Forest Service has never explained what a 'stand exam' or 'walkthrough' entails, and how the data gleaned from those activities helped it to determine that the project complies with the Roadless Rule.").

With respect to project-specific analysis, the Forest Service on remand prepared a Revised Decision Memo that for the first time analyzed the diameter size classes within the project area. ER-46-52. Appendix B to this Revised Decision Memo confirmed that approximately 95 percent of the trees within Tecuya Ridge are smaller than 14-inches. *Id*. The data produced by the Forest Service also shows that the average tree size on Frazier Mountain, where the agency defined "larger trees" as 10 inches dbh and above, is *larger* than that average within the Tecuya Ridge project, where the agency has drawn the line at 21 inches dbh. This revelation further strengthens the court's conclusion in *Tecuya I* that the Forest Service's definition of "large" trees on Frazier Mountain is

13

evidence that "tends to confirm that trees of up to 21-inches dbh are not 'generally small'" on Tecuya Ridge. 25 F.4th at 658.

On remand, however, the Forest Service has again neglected to address these reference points, in favor of the growth potential approach discussed in Section II, *supra*. Defendants provide two primary arguments in an unsuccessful attempt to justify this continuing lack of analysis.

First, Defendants claim that the agency was not "required to specifically address" these points "if not germane to the agency's new analysis," and assert that "this Court should uphold the Forest Service's revised decision because it adequately substantiated its conclusion based on a fresh approach." Defs.' Br. at 24. As detailed in Section II, *supra*, this "fresh approach" is an unlawful and unreasonable interpretation of the Roadless Rule's "generally small diameter" timber requirement, and thus provides no justification for the Forest Service's failure to rationally explain how its decision is consistent with the Los Padres Forest Plan's definition of "large" trees.

Underscoring the Forest Service's lack of analysis, Defendants attempt to manufacture a post hoc justification for the agency in their brief, stating that "the benchmark for 'large trees'" in the Forest Plan "does not imply that something less than that is necessarily a 'medium' tree," because the Forest Plan "does not explicitly or implicitly state that there are three categories of size." Defs.' Br. at 25.

14

Thus, the argument continues, "[i]t is equally plausible that anything smaller than 24-inches dbh could be classified as 'small'" under the Plan. Defs.' Br. at 25. This rationale, provided for the first time in briefing, only underscores the fact that the Forest Service provided no such explanation on remand or elsewhere in the administrative record. *Cal. PUC v. FERC*, 879 F.3d 966, 975 (9th Cir. 2018) ("Appearance that the agency's interpretation is no more than a *post hoc* rationalization advanced by an agency seeking to defend past agency action against attack" is not entitled to deference).

Second, Defendants attempt to wave away any significance of the Ninth Circuit's decision in *Tecuya I* by arguing that a Court may not "dictat[e] to the agency the methods, procedures, and time dimension of the needed inquiry." Defs.' Br. at 24 (quoting *Fed. Power Comm'n v. Transcon. Gas Pipe Line Corp.*, 423 U.S. 326, 333 (1976)). This argument mischaracterizes both Appellants' argument and the Court's decision and remand in *Tecuya I*. That decision did not, in any way, purport to dictate methods, procedures, or time dimensions of the Forest Service's actions on remand, but instead identified and discussed several aspects of the Forest Service's first decision that led the Ninth Circuit to reverse and remand that decision. Even if the Forest Service was not, as Appellees argue, "required to specifically address" those grounds, Defs.' Br. at 24, the Ninth Circuit's reasoning for vacating and remanding the same project now before the Court for a second

15

time is surely still instructive. *McOmie-Gray v. Bank of Am. Home Loans*, 667 F.3d 1325, 1329 (9th Cir. 2012) (a prior panel's decision is relevant not only as to its "logically necessary" holdings but also as to its "reasoned dicta.").

## CONCLUSION

For the foregoing reasons, the Tecuya Ridge revised Decision Memo "is not sustainable on the administrative record," and therefore "must be vacated and the matter remanded … for further consideration." *Tecuya I*, 25 F.4th at 659.

Respectfully submitted this 14th day of August, 2023,

*/s/ Brian Segee*

_____

Brian Segee
Justin Augustine

*Attorneys for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Brian Segee*

Brian Segee

*Attorney for Plaintiffs-Appellants*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 23-55054

I am the attorney or self-represented party.

**This brief contains** | 3,639 | **words,** including | | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated | | .

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Brian Segee | **Date** | August 14, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** *Rev. 12/01/22*